IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RASHAD ROWE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 18-295 |
| | ) | |
| MUNICIPALITY OF MCKEESPORT POLICE DEPARTMENT, JUSTIN TOTH, TIM BLISS, and THOMAS GREEN, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**OPINION and ORDER**

Plaintiff Rashad Rowe brings this this civil rights action alleging that during a traffic stop on March 31, 2016, the Defendants violated his rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution when they stopped his vehicle without sufficient cause, forcibly removed him from his vehicle at gunpoint, and searched him and his vehicle. Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6). ECF No. 22. Mr. Rowe was given until February 18, 2019 to respond to the motion to dismiss. He sought and received an extension of time to respond, first to March 11, 2019 (ECF No. 26), and then until March 25, 2019 (ECF No. 28). Mr. Rowe has not filed a formal response to the motion to dismiss, however, in his first motion for extension of time, even though he had not yet received Defendants' motion, he included "to the best of [his] knowledge," a "Brief Response." ECF No. 25-1. After careful review of the pleadings, and for the reasons that follow, Defendants' motion will be granted.

## I. BACKGROUND

### A. Complaint Allegations

Viewing the allegations in a light most favorable to Plaintiff, Rashad Rowe, he alleges the following. On March 31, 2016, while leaving his sister's apartment complex in McKeesport, Pennsylvania, he was followed by a McKeesport Police Department vehicle. At the stop sign leading out of the apartment complex, Mr. Rowe signaled to make a right turn, turned right, and proceeded down a hill. At the bottom of the hill, McKeesport Police Officer Justin Toth stopped Mr. Rowe's vehicle. Mr. Rowe alleges that he began recording the encounter on his cell phone. Officer Toth approached the vehicle and asked Mr. Rowe for his license and registration, and informed him that he stopped his vehicle because he failed to activate his turn signal.

Another McKeesport Police Officer, Timothy Bliss, arrived on the scene and told Officer Toth that he knew Mr. Rowe. Mr. Rowe, however, did not recognize Officer Bliss as someone who had ever arrested him. Officer Bliss asked Mr. Rowe for permission to search his vehicle, but Mr. Rowe did not consent, stating that the officer had no probable cause. Officer Bliss called for "backup. Additional police officers arrived on the scene, and with guns drawn, surrounded Mr. Rowe's vehicle. Officer Bliss again asked for permission to search the vehicle. Mr. Rowe refused to consent, and asked Officer Bliss why he wanted to search his car. Officer Bliss explained it was because he was aware that Mr. Rowe was "known for guns." Mr. Rowe responded that he was not known for guns. The other officers began to scream at Mr. Rowe. After five minutes, Mr. Rowe was "yanked' out of his vehicle, "thrown to the ground," handcuffed, and searched. His vehicle was then searched. No items were seized from the searches. Mr. Rowe was issued a ticket for having "tint" on his windows, and released.

### B. Relevant Public Records

In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6). Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing 5A Wright and Miller, Federal Practice and Procedure: Civil 2d, § 1357; Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990)). Defendants have submitted the following relevant public records. Officer Toth issued two summary traffic citations to Mr. Rowe for failing to use a turn signal, and for illegal window tint. Commonwealth v. Rowe, Docket Number MJ-05213-TR-0000246-2016 (violation of 75 Pa. Cons. Stat. § 3334(a)) and Docket Number MJ-05213-TR-0000247-2016 (violation of 75 Pa. Cons. Stat. § 4107(a)(1)) (attached as Ex. A. to Defs.' Br. Supp. (ECF No. 23-1)). Mr. Rowe was adjudged guilty of both offenses. Id.

Defendants also submitted an Allegheny County Court of Common Pleas Court Summary for Mr. Rowe. Allegheny County Court of Common Pleas Court Summary, January 10, 2019 (attached as Ex. B. to Defs.' Br. Supp. (ECF No. 23-2)). The Court Summary indicates that in 1998, Mr. Rowe plead guilty to a charge of carrying a firearm without a license in violation of 18 Pa. Cons. Stat. § 6106. Id. at 1. Additionally, Mr. Rowe was found guilty in 2004, of possessing a firearm in violation of 18 Pa. Cons. Stat. § 6105, and a charge of carrying a firearm without a license. Id. at 2.

## II. STANDARD OF REVIEW

When reviewing a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff

may be entitled to relief." Eid v. Thompson, 740 F.3d 118, 122 (3d Cir. 2014) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.2008)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556); see also Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir.2009) (quoting Graff v. Subbiah Cardiology Associates, Ltd., 2008 WL 2312671 (W.D. Pa. June 4, 2008)); see also Connelly v. Lane Const. Corp., 809 F.3d 780, 790 (3d Cir.2016) ("Although a reviewing court now affirmatively disregards a pleading's legal conclusions, it must still . . . assume all remaining factual allegations to be true, construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them.") (citing Foglia v. Renal Ventures Mgmt., *LLC*, 754 F.3d 153, 154 n. 1 (3d Cir.2014)).

Importantly, the Court must liberally construe the factual allegations of the Complaint because pleadings filed by pro se plaintiffs are held to a less stringent standard than formal pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Therefore, if the Court

"can reasonably read [the] pleadings to state a valid claim on which [plaintiff] could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or [plaintiff's] unfamiliarity with pleading requirements." Wilberger v. Ziegler, No. 08-54, 2009 WL 734728, at *3 (W.D. Pa. March 19, 2009) (citing Boag v. MacDougall, 454 U.S. 364 (1982) (per curiam)).

Plaintiff's allegations must be accepted as true and construed in the light most favorable to plaintiff when determining if complaint should be dismissed. Trzaska v. L'Oreal USA, Inc., 865 F.3d 155, 162 (3d Cir. 2017), as amended (Aug. 22, 2017). Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. Morse v. Lower Merion School District, 132 F.3d 902, 906, n. 8 (3d Cir.1997). The primary question in deciding a motion to dismiss is not whether the Plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. Maio v. Aetna, 221 F.3d 472, 482 (3d Cir.2000). The purpose of a motion to dismiss is to "streamline [ ] litigation by dispensing with needless discovery and factfinding." Neitzke v. Williams, 490 U.S. 319, 326–327, (1989).

Finally, if the court decides to grant a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the court must next decide whether leave to amend the complaint must be granted. The Court of Appeals has "instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." Phillips, 515 F.3d at 236 (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir.2002)).

## III. DISCUSSION

Mr. Rowe asserts claims of unlawful search and seizure, and excessive force under the Fourth, Eighth, and Fourteenth Amendments against all Defendants. He also asserts claims of official oppression, municipal liability, and failure to supervise, train, and discipline officers against the Municipality of McKeesport Police.

### A. Fourteenth Amendment

"Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." Cty. of Sacramento v. Lewis, 523 U.S. 833, 842, 118 S. Ct. 1708, 1714, 140 L. Ed. 2d 1043 (1998) (citation and quotation omitted). As regards Mr. Rowe's claims of excessive force and unlawful search and seizure, said claims are to be analyzed under the Fourth Amendment, rather than as substantive due process claims under the Fourteenth Amendment. Id.; see also Graham v. Connor, 490 U.S. 386, 395 (1989) (excessive force claims "in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment"). Accordingly, Mr. Rowe's claims asserted under the Fourteenth Amendment are dismissed, with prejudice.

### B. Eighth Amendment

Mr. Rowe is unable to maintain a claim under the Eighth Amendment because he does not allege that he was arrested or confined as a result of the conduct occurring on March 31, 2016. Ingraham v. Wright, 430 U.S. 651, 671, n. 40 (1977) ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally

associated with criminal prosecutions"). Accordingly, Mr. Rowe's claims asserted under the Eighth Amendment are dismissed, with prejudice.

**C. Fourth Amendment**

Mr. Rowe alleges the officers violated his Fourth Amendment rights, first, by conducting an unlawful traffic stop without probable cause; next, by unlawfully removing him from his vehicle based on a request to search without cause; and finally, by removing him from his vehicle with unlawful, excessive force. Each of these claims is addressed in turn.

**1. Traffic Stop**

A "Fourth Amendment seizure of every occupant of a vehicle occurs the moment that vehicle is pulled over by the police." United States v. Mosley, 454 F.3d 249, 253 n. 6 (3d Cir. 2006). "The legality of the seizure depends upon the legality of the traffic stop." Id. The United States Supreme Court has "established a bright-line rule that any technical violation of a traffic code legitimizes a stop, even if the stop is merely pretext for an investigation of some other crime." Id. at 252. A "a traffic stop will be deemed a reasonable 'seizure' when an objective review of the facts shows that an officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop." United States v. Delfin-Colina, 464 F.3d 392, 398 (3d Cir. 2006).

Officer Toth stopped Mr. Rowe's vehicle because he observed that Mr. Rowe failed to use his turn signal when making a right turn. Although Mr. Rowe alleges that he did use his turn signal, public records provided by Defendants unequivocally show that Mr. Rowe was adjudged guilty of failing to use his turn signal on March 31, 2016. Commonwealth v. Rowe, Docket Number MJ-05213-TR-0000246-2016. Mr. Rowe may not recover for harm caused by alleged unconstitutional action, if a judgment in his favor would imply that his state court guilty

conviction is invalid. Heck v. Humphrey, 512 U.S. 477, 487 (1994)[1]. Such is the case here, as a ruling in favor of Mr. Rowe, that he was unlawfully stopped and seized because he had not violated the traffic rule, would imply that his guilty conviction for failing to use his turn signal was invalid. Accordingly, Mr. Rowe's claim of an unreasonable seizure in violation of the Fourth Amendment is dismissed.

### 2. Removal from Vehicle

Next, Mr. Rowe alleges that he was unlawfully removed from his vehicle. Prior to his forced removal from the vehicle, Officer Bliss asked Mr. Rowe for permission to search the vehicle. The first time he asked for permission, the only other officer present was Officer Bliss. Mr. Rowe told Officer Bliss he would not consent to a search because there was no probable cause to search his vehicle.

After Mr. Rowe refused permission to search his vehicle, Officer Bliss requested assistance from other officers. Several officers arrived on the scene, surrounded Mr. Rowe's vehicle, and drew their guns. Officer Bliss again requested permission to search Mr. Rowe's vehicle, and explained to Mr. Rowe that his reason was because he knew that Mr. Rowe was "known for guns." Mr. Rowe stated that he was not so known, and maintained his refusal to consent to a search of his vehicle. After about five minutes of the police officers screaming at

---

[1] In Heck v Humphrey, the United States Supreme Court held:

> [W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. 477, 487.

Mr. Rowe, he was forcefully removed from his vehicle, thrown to the ground, and handcuffed. Mr. Rowe and his vehicle were then searched. The searches did not reveal evidence of guns or any other crime. Mr. Rowe was issued a ticket for "tint" on his windshield and permitted to leave.[2]

A "traffic stop's mission is 'to address the traffic violation that warranted the stop and attend to related safety concerns.'" United States v. Clark, 902 F.3d 404, 410 (3d Cir. 2018) (quoting Rodriguez v. United States, 135 S. Ct. 1609, 1614 (2015)). "To prolong a stop beyond [its permissible length], the officer must have acquired reasonable suspicion during the mission to justify further investigation." Clark, 902 F.3d at 410 (citing Rodriguez, 135 S. Ct. at 1614)). An officer is not permitted, however, to prolong a traffic stop merely to "'detect evidence of ordinary criminal wrongdoing.'" Clark, 902 F.3d at 410 (citing Rodriguez, 135 S. Ct. at 1615)).

The reason Mr. Rowe's initial traffic stop was prolonged was due to safety concerns raised by Officer Bliss. Officer Bliss recognized Mr. Rowe, and knew that he had a connection to firearms. Officer Bliss wanted to search the vehicle for firearms, presumably with an immediate concern for officer safety. His personal knowledge that Mr. Rowe had previously been involved with firearms is sufficient to justify an immediate search of Mr. Rowe's person and his vehicle to prevent harm to officers and the public. In this regard, it does not matter that Mr. Rowe stated that he was not known for guns, as his assertion is insufficient to allay Officer Bliss's present concern for safety.

Because Mr. Rowe refused to consent to a search, he was forcefully removed. The Court's inquiry therefore is, "[g]iving due regard to the pressures faced by the police, . . .

---

[2] Either at the scene, or at a later time, Mr. Rowe was also issued a citation for failing to use his turn signal as indicated by Commonwealth v. Rowe, Docket Number MJ-05213-TR-0000246-2016.

whether it was objectively reasonable for the officer to believe, in light of the totality of the circumstances, that [physical] force was necessary" to remove Mr. Rowe from the vehicle in order to prevent harm to an officer or others. Hill v. Nigro, 266 F. App'x 219, 221 (3d Cir. 2008) (addressing the use of deadly force to prevent a suspect's escape). The court finds that it was objectively reasonable for the officers to physically remove Mr. Rowe from his vehicle after first asking for his voluntary consent to search his vehicle. Officer Bliss knew who Mr. Rowe was, and knew that he had prior criminal involvement involving firearms, and therefore was concerned that Mr. Rowe may have immediate access to firearms during the traffic stop. Mr. Rowe's refusal to a consent to a voluntary search likely heightened the officers' safety concerns. Accordingly, Mr. Rowe's removal from his vehicle was lawful.[3]

### 3. Excessive force

Finally, Mr. Rowe alleges that his rights were violated because he was involuntarily removed from his vehicle with excessive force.

The "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id. at 396 (citing Terry v. Ohio, 392 U.S. 1, 22–27 (1968)). "It is conceivable that a law enforcement officer, acting within the scope of his official duties, may use force that is excessive." Lora-Pena v. F.B.I., 529 F.3d 503, 506 (3d Cir. 2008). Whether a law enforcement official "used excessive force in the course of making an . . . investigatory stop, or other 'seizure'" . . . is "properly analyzed under the

---

[3] Mr. Rowe's allegations and Fourth Amendment claims are aimed at the officers' conduct in initiating the traffic stop and the subsequent, allegedly unlawful, search of his person and his vehicle without cause. Mr. Rowe does not assert claims that the conduct or the extent of the searches were otherwise unlawful. To the extent that he intended to assert such claims, his allegations are insufficient to establish an unlawful search of his person or vehicle, as he only provides allegations indicating that in fact he and his car were searched, but he does not provide factual allegations of the manner in which the searches were conducted.

Fourth Amendment's 'objective reasonableness' standard." Graham, 490 U.S. at 388. Whether the force used is reasonable depends on "the facts and circumstances of each particular case," "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396 (citing Terry, 392 U.S. at 20-22). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97. The "question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397.

Mr. Rowe described his forced removal from his vehicle as involving being "yanked out [of] my car, thrown to the ground, handcuffed, [and] searched." ECF No. 7, at 4. In Mr. Rowe's "Brief Response," he similarly alleges that he "was assaulted by the defendants in the case when they violently pulled him out [of] his car and put him on the ground[, and ] placed him in handcuff[s] while his vehicle was illegally search[ed]." ECF No 25-1. Mr. Rowe was asked to consent to a search of his vehicle twice. Before resorting to physical force, Officer Bliss explained to Mr. Rowe that he knew him, and knew that he had a connection to firearms. Therefore, he had conveyed to Mr. Rowe that his request to search was based on a safety concern that Mr. Rowe possessed firearms on his person or in his car. After Mr. Rowe's second refusal to consent to a search, the officers decided to physically remove him from his car.

Applying the above legal principles to Mr. Rowe's allegations, the Court finds that the officers did not use excessive force in removing Mr. Rowe from his vehicle in order to search his person and his vehicle for firearms. An objective reasonableness test requires a focus on the

officers' actions "in light of the facts and circumstances confronting them," which in this case was Officer Bliss's familiarity with Mr. Rowe and knowledge of his past involvement with firearms.[4] Graham, 490 U.S. at 397. Based on Mr. Rowe's description of the officers' conduct, the officers' use of force to remove Mr. Rowe from his vehicle was objectively reasonable. Accordingly, Mr. Rowe fails to state a Fourth Amendment claim based on excessive force.

### E. Official oppression

There is no private cause of action for official oppression in Pennsylvania, therefore Mr. Rowe's claim of official oppression is dismissed with prejudice. Bond v. Rhodes, No. 2:05CV241, 2006 WL 1617892, at *4 (W.D. Pa. June 8, 2006) (citing Taylor v. City of Philadelphia, No. CIV.A. 96-740, 1998 WL 151802, at *12 (E.D. Pa. Apr. 1, 1998) (collecting cases)).

### F. Monell Liability

In Monell v. Department of Social Services, 436 U.S. 658 (1978), the Supreme Court held that local governments are "persons" subject to suit under § 1983 under certain circumstances. "To plead a municipal liability claim, a plaintiff must allege that 'a [local] government's policy or custom . . . inflict[ed] the injury' in question." Estate of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. Jan. 29, 2019) (quoting Monell, 436 U.S. at 694.) To properly plead a failure-to-train claim, a plaintiff must show that the defendant's "failure to train its employees 'reflects a deliberate or conscious choice.'" Estate of Roman, 914 F.3d at 798 (quoting Brown v. Muhlenberg Twp., 269 F.3d 205, 215 (3d Cir. 2001)). In addition, for section

---

[4] Although Defendants have provided documentation to verify that in fact Mr. Rowe was "known for guns," Ex. B to Defs' Br. Supp., the Court is not to view the event with 20/20 hindsight. Graham, 490 U.S. at 396. In other words, the existence of these records, while verifying that Officer Bliss's statement had a basis in fact, does not affect the conclusion reached.

12

1983 liability to exist, the failure to train must, "amount[] to deliberate indifference to the rights of persons with whom the police come into contact." Id. (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)). As recently explained by the United States Court of Appeals for the Third Circuit:

> A plaintiff sufficiently pleads deliberate indifference by showing that '(1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.'

Estate of Roman, 914 F.3d at 798 (quoting Doe v. Luzerne County, 660 F.3d 169, 180 (3d Cir. 2011)).

Mr. Rowe alleges a claim of municipal liability based on an alleged failure to supervise, train, and discipline the officers, but he provides no supporting allegations. He therefore has not alleged sufficient facts to state a municipal liability claim, or a failure to train or supervise claim. Moreover, because the Court has found that the officers acted lawfully in effectuating the traffic stop, and in their subsequent conduct in removing Mr. Rowe from his vehicle and conducting the searches, Mr. Rowe cannot state a Monell claim based on that same conduct.

### G. Claims asserted against Defendant Tom Green

Mr. Rowe provides no allegations that Defendant Tom Green engaged in any unlawful conduct. Accordingly, all claims purported to be asserted against Defendant Tom Green are dismissed with prejudice, and Tom Green is dismissed as a Defendant.

## IV. CONCLUSION

Accordingly, based upon the foregoing discussion, it is hereby **ORDERED** that Defendants' Motion to Dismiss (ECF No. 2) is **GRANTED**, and the Complaint is **DISMISSED**.

A district court must permit a curative amendment, unless an amendment would be inequitable or futile. <u>Phillips</u>, 515 F.3d at 236. The Court cannot say that it would be futile to allow Mr. Rowe to amend his Fourth Amendment claims, which if properly alleged, may also allow Mr. Rowe to amend his municipal liability claim. To permit amendment of any other claims, however, would be futile. The Plaintiff shall file any Amended Complaint within thirty days of being served with a copy of this Opinion and Order. It is hereby ordered that the Clerk of Court shall close this case if, after the passage of thirty days from service of the Opinion and Order upon the Plaintiff, the Plaintiff has not filed an Amended Complaint.

BY THE COURT:

Dated: June 24, 2019

Marilyn J. Horan
United States District Court Judge

cc: RASHAD ROWE, pro se
30135-068
USP Allenwood
U.S. PENITENTIARY
P.O. BOX 3000
WHITE DEER, PA 17887
(via U.S. First Class Mail)